IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FAIRE FEAZ, individually and as :
representative of the classes,   :
                                 :
     Plaintiff,                  :
                                 :
vs.                              :
                                 :     CIVIL ACTION 12-0350-KD-M
WELLS FARGO BANK, N.A., and      :
WELLS FARGO HOME MORTGAGE, INC.,:
                                 :
     Defendants.                 :

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendants Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, Inc.[1] (Docs. 14-15) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Diversity jurisdiction, on behalf of two separately-identified classes, has been invoked in this Court under 28 U.S.C. § 1332(d)(2).  After consideration, it is recommended that Wells Fargo's Motion to Dismiss (Docs. 14-15) be granted and that all four of Plaintiff's claims be dismissed.

------

[1]Defendants have asserted that Wells Fargo Home Mortgage is an unincorporated division of Wells Fargo Bank, N.A., and not a separate corporate entity (Doc. 15, p. 3 n.2).  Therefore, the Court will, refer to the two Defendants as one throughout the balance of this Report.

The facts are, briefly, as follows.  Plaintiff Faire Feaz,
who resides in Chickasaw, Alabama, obtained an FHA mortgage loan
from Magnolia Mortgage Company, LLC. on May 30, 2003 for a house
that falls within a Special Flood Hazard Area (hereinafter *SFHA*)
(Doc. 1, ¶¶ 9, 14-15).  Defendant Wells Fargo acquired the
Mortgage on June 11, 2003 and currently holds the mortgage note
(*id.* at ¶ 14).  Because the house was within an SFHA, Feaz
purchased $63,000 worth of flood insurance as required by law
(*id.* at ¶¶ 15, 17).  The insurance was renewed in each of the
next four years; in May 2007, the policy was renewed again for
$63,000 (*id.* at ¶ 18).

The next month, "Wells Fargo sent Plaintiff a form letter
('Flood Insurance Coverage Deficiency Notification'), contending
that her flood insurance coverage was not adequate" as she
should have "replacement cost coverage;" Feaz received a second
such letter in July 2011 (*id.* at ¶ 19).  The Notifications
"stated that Wells Fargo would be required to obtain additional
flood insurance, at Plaintiff's expense, if she did not provide
evidence of additional insurance within 45 days" (*id.* at ¶ 21).

On June 18, 2007, Wells Fargo sent Feaz a letter entitled
"Notice of Temporary Flood Insurance Placed by Lender Due to
Deficient Coverage," requiring that she insure her home for the
full replacement value; she received a second such letter on
July 26, 2007 (*id.* at ¶ 22).  The letters stated that Wells

2

Fargo had purchased additional flood insurance from American Security Insurance Company; the July 26, 2007 letter stated that a one-year flood insurance policy would be purchased if Plaintiff did not provide proof that she had done so herself within thirty days (*id.* at ¶ 24).

On May 25, 2012, Plaintiff filed this action on behalf of herself and two different classes, which she wishes to represent, defined as follows:

> **Proposed Alabama Flood Insurance Class:** All persons who have or had a FHA loan with Defendants secured by their residential property in the State of Alabama, and were required by Defendants or their agents or affiliates to purchase or maintain flood insurance on their property in the United States within the applicable limitations period.
>
> ***
>
> **Proposed Alabama Lender-Placed Insurance Class:** All Alabama borrowers who were charged for lender-placed flood insurance by Defendants and/or paid such charges to Defendants, in whole or in part, within the applicable limitations period.

(*id.* at ¶¶ 28-29; *see generally id.* at ¶¶ 28-36). Feaz raised four claims in bringing this action: (1) breach of contract (*id.* at ¶¶ 37-43); (2) breach of covenant of good faith and fair dealing (*id.* at ¶¶ 44-49); (3) breach of fiduciary duty/ misappropriation of funds held in trust (*id.* at ¶¶ 50-59); and

(4) unjust enrichment (*id.* at ¶¶ 60-65).  Claims one and two are
brought on behalf of the Flood Insurance Class (*id.* at ¶¶ 43,
48) while claims three and four are brought on behalf of the
Lender-Placed Insurance Class (*id.* at ¶¶ 59, 65).  In bringing
this action, Feaz seeks the following relief:  to be designated
as class representative of the two identified classes;
restitution; injunctive relief against Defendant; actual,
statutory, and punitive damages; and reasonable attorneys' fees
(*id.* at ¶ 66).

Defendant filed a Motion to Dismiss on July 27, 2012,
seeking to have all claims dismissed (Docs. 14-15).  Plaintiff
filed a response (Doc. 34) to which Defendant has replied (Doc.
38).

The Court notes, initially, that "[w]hen considering a
motion to dismiss, all facts set forth in the plaintiff's
complaint 'are to be accepted as true and the court limits its
consideration to the pleadings and exhibits attached thereto.'"
*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.
2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510
(11th Cir. 1993)).  In order to state a claim for relief, the
Federal Rules of Civil Procedure state that a pleading must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The
U.S. Supreme Court explained that the purpose of the rule was to

4

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[2]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).  "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  "Only a complaint that states a plausible claim for

---

[2] *Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombley*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

In its Motion to Dismiss (Docs. 14-15), Defendant has asserted that all claims brought by Feaz should be dismissed. The Court will address Plaintiff's claims in turn.

Plaintiff's first claim in this action is that Wells Fargo breached her mortgage contract in force-placing flood insurance on her in an amount that exceeds the unpaid principal balance of her mortgage loan (Doc. 1, ¶¶ 37-43). Feaz argues that she had flood insurance in an amount that exceeded the amount of the balance due on her mortgage and that this satisfied the statute

6

and that Defendant's force-placing her to acquire more insurance
was a breach of contract (*see* Doc. 1, ¶¶ 14-24).  The Court
notes that, under Alabama law,[3] "[t]he elements of a breach-of-
contract claim [] are (1) a valid contract binding the parties;
(2) the plaintiffs' performance under the contract; (3) the
defendant's nonperformance; and (4) resulting damages."
*Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105-06 (Ala. 2002)
(*citing State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303
(Ala. 1999)).

Before addressing the breach of contract claim, the Court
will start with a review of the legislation that led to the
controversy herein.  Congress passed the National Flood
Insurance Act (hereinafter *NFIA*) in 1968 in order, among other
things, "to reduce, by implementation of adequate land use
controls and flood insurance, the massive burden on the federal
fisc of the ever-increasing federal flood disaster assistance."
*Till v. Unifirst Federal Savings and Loan Association*, 653 F.2d
152, 159 (5th Cir. 1981).[4]  Under the NFIA, banking institutions

_____

[3]The Mortgage Agreement states that "[t]his Security Instrument
shall be governed by federal law and the law of the jurisdiction in
which the Property is located."  Doc. 14, Exhibit A, ¶ 14.  Since the
property is located in Alabama, *see id.* at p. 1, Alabama law controls.
[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of
Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent
decisions of the former Fifth Circuit rendered prior to October 1,
1981.

are prohibited from making loans on property located in SFHA's unless the property is covered by flood insurance "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage[5] made available under the Act with respect to the particular type of property, whichever is less." 42 U.S.C. § 4012a(b)(1). The statute goes on to state that if the lender learns that the property is underinsured for floods, the lender is to notify the borrower of the need to purchase more insurance. 42 U.S.C. § 4012a(e)(1). "If the borrower fails to purchase such flood insurance within 45 days after notification [], the lender or servicer for the loan shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the lender." 42 U.S.C. § 4012a(e)(2). The lender's purchase of flood insurance on behalf of the borrower is known as "force-placing" the insurance. *Hayes v. Wells Fargo Home Mortgage*, 2006 WL 3193743, at *4 (E.D. La. October 31, 2006).

The question for the Court is whether Defendant had the authority to demand that Feaz obtain more flood insurance than the amount that she already had, an amount that exceeded the principal balance due under her mortgage agreement.

-------

[5]The parties agree that $250,000 is the maximum limit of coverage under the NFIA for a home (*see, e.g.*, Doc. 1, ¶ 19; Doc. 15, p. 11).

To answer this question, Defendant has directed this Court's attention to a government website, run by the Comptroller of the Currency, which provides the following Q&A information:

> The loan balance on my home has decreased over the years so that I now owe $50,000 on my home.  I have a new servicer and it is requiring that my flood insurance be increased.  My present policy satisfies the minimum flood insurance requirement. Can my lender require more flood insurance than the minimum required by the regulation?

> Yes.  Lenders are permitted to require more flood insurance coverage than the minimum amount required by the Flood Disaster Protection Act (FDPA or Act).  If the flood insurance requested by the lender is greater than $250,000, then you or the lender may have to seek such coverage outside the NFIP.

> Under the Act, the mandatory purchase amount is the lesser of:

> - The outstanding principal balance of the loan(s), or
> - The maximum amount of insurance available under the National Flood Insurance Program (NFIP), which is the lesser of:
>   - The maximum limit available for the type of structure ($250,000 for a residential structure), or
>   - The insurable value of the structure (typically the replacement cost value of your home).

> For example, on a home with only a first lien (no home equity loan or home equity line of credit), an insurable value

9

> greater than $50,000 and a principal balance owed of $50,000, the minimum required amount under the Act would be $50,000.
>
> Some lenders may require in their loan agreements that the amount of flood insurance equal that of your hazard insurance so you are not underinsured.  The reasoning is that if the insurable value (replacement cost) of the home is higher, and there is a total loss due to a flood, the lower amount, in this case $50,000, might not be adequate to rebuild your home.
>
> Each lender has the responsibility to set its own flood insurance policies and procedures to meet its business needs and to protect its interest in the collateral. However, lenders should avoid creating situations where a building is over-insured.

(Doc. 15, pp. 8-9) (*quoting* <http;//helpwithmybank.gov/get-answers/insurance/flood-insurance/faq-flood-insurance-09.html>). Defendant further points out that the Federal Emergency Management Agency and the Federal Deposit Insurance Corporation encourage banks to require borrowers to insure their properties for more than the mortgage balance owed (*see* Doc. 15, pp. 9-10).[6]

---

[6]The FDIC Compliance Manual, from June 2009, in a section entitled "Amount of Flood Insurance Required," states that "[t]he amount of insurance coverage may not be less than the value of the improved structure(s)" (Doc. 16, Exhibit A, p. V-6.3;).  Likewise, another FDIC document entitled "Summary of Flood Insurance Requirements," states that "[t]he amount of the insurance should not be less than the value of the improved structure" (Doc. 16, Exhibit D, p. 2 under section entitled "*Notices to Borrowers* (12. C.F.R. § 339.3)"; *see also* http://www.fdic.gov/news/news/financial/2001/fil0181a.html).  A brochure entitled "National Flood Insurance (Continued)

Defendant has also pointed out court decisions upholding this policy of requiring that property owners purchase flood insurance in excess of the amount owed on the property. *See, e.g., Hayes*, 2006 WL 3193743, at *4 ("The 'at least' language indicates that this requirement is a minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding"); *Gibson v. Chase Home Finance, LLC*, 2011 WL 6319401, at *3 (M.D. Fla. December 16, 2011) ("[T]he NFIA mandates only a minimum amount of flood coverage []. A lender is free to establish by contract a right to require that a borrower hold a larger amount of flood insurance"). Even the Alabama Supreme Court, in a decision entered before either *Hayes* or *Gibson* were decided, held as follows:

> [G]iven that the "primary purpose" of the flood-program legislation is to reduce the massive burden on the national treasury resulting from escalating federal expenditures for flood-disaster relief

---

Program: Mandatory Purchase of Flood Insurance Guidelines," dated September 2007 and produced by the U.S. Department of Homeland Security, states that "[a] sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value]" (Doc. 16, Exhibit C, p. 27).

> assistance, it can be logically argued that
> Congress would not be adverse to the
> *contractual* procurement of force-placed
> insurance covering the full value of the
> property.  After all, the obligation borne
> by the federal treasury for flood-disaster
> relief assistance to homeowners of
> properties damaged or destroyed by flooding
> may well extend beyond the balance of any
> mortgage loan encumbering them.

*Custer v. Homeside Lending, Inc.*, 858 So.2d 233, 244  (Ala.
2003).

It appears to the Court that government agencies and some
courts have decided that public policy allows for banking
institutions to require property owners in SFHA's to purchase
more insurance than the balance due on the mortgage.  This
policy has been upheld when the homeowners entered into
contracts providing for such requirements.

In this action, Defendant has produced a copy of Feaz's
mortgage agreement that includes such a provision, stating as
follows:

> **Fire, Flood and Other Hazard Insurance.**
> Borrower shall insure all improvements on
> the Property, whether now in existence or
> subsequently erected, against any hazards,
> casualties, and contingencies, including
> fire, for which Lender requires insurance.
> This insurance shall be maintained in the
> amounts and for the periods that Lender
> requires.  Borrower shall also insure all
> improvements on the Property, whether now in
> existence or subsequently erected, against
> loss by floods to the extent required by the

> Secretary.  All insurance shall be carried
> with companies approved by Lender.  The
> insurance policies and any renewals shall be
> held by Lender and shall include loss
> payable clauses in favor of, and in a form
> acceptable to, Lender.

(Doc. 14, Exhibit A, ¶ 4).  While both parties acknowledge this provision in the agreement, they disagree on the meaning of it. Defendant asserts that the entire passage relates to flood insurance (Doc. 15, pp. 12-15), while Plaintiff argues that it does not (Doc. 34, pp. 13-17).  Various court decisions recognize these two opposing views.

In *LaCroix v. U.S. Bank, N.A.*, 2012 WL 2357602, at **1, 4 (D.Minn. June 20, 2012), the United States District Court for Minnesota examined language in a mortgage contract containing a hazard provision with language that is identical to the first three sentences in the provision under consideration in this action; that Court held that the first two sentences gave the bank the authority to require flood insurance in an amount that exceeded the amount owed on the property.  The Court went on to hold that "[t]he third sentence is required by law and does not limit the amount of flood insurance that the lender may require." *LaCroix*, 2012 WL 2357602, at *4.  The plaintiff's claims for breach of contract, covenant of good faith and fair dealing, unjust enrichment, and breach of fiduciary duty were all dismissed.

In reaching its decision, the *LaCroix* Court referenced *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 3665394, at *4 (D.Mass. August 18, 2011), a factually similar case, in which the District Court had dismissed claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  That decision, however, was overturned on appeal by the United States Court of Appeals for the First Circuit.  *Kolbe v. BAC Home Loans Servicing, L.P.*, 695 F.3d 111 (1st Cir. 2012).[7]  In the appellate decision, the Court examined the same mortgage provision, referred to as Paragraph 4 there, under consideration in this action and construed it as follows:

> Importantly, the paragraph is structured to address two different categories of insurance, with the first and third sentences containing identical introductory language directing the borrower to insure "all improvements on the Property, whether now in existence or subsequently erected." The repetition arguably denotes two parallel statements of coverage, each establishing a particular coverage requirement for the same property.  The first two sentences also are distinct from the third because they address insurance required by the lender, while the third sentence addresses insurance required by the Secretary.  The second sentence,

---

[7] The Court notes that this decision, and the dissenting opinion, have been withdrawn, as of November 1, 2012, so that the case can be heard *en banc* (*see* Doc. 43 Attachment).  Nevertheless, the Court finds the opinions, and particularly the dissenting opinion, instructive and will discuss the substance of those opinions herein.

referring to "This insurance," is written as
a modification of the first sentence,
addressing the required amount of the
previously identified form of insurance.  By
contrast, the next sentence, referring to
flood coverage, contains its own
specification of amount—"the extent required
by the Secretary."

The view that Paragraph 4 imposes
independent requirements for hazard and
flood insurance is lent force by the title
for the paragraph, which breaks out "fire"
and "flood" from all other hazards.  Each of
those two specifically identified hazards is
then explicitly referenced, separately, in
one of the two parallel sentences.  The fact
that both "fire" and "flood" are mentioned
in the title, but the "all hazards" sentence
refers only to "fire," further supports the
view that the flood coverage was handled by
the separate, linguistically parallel third
sentence.

Moreover, the word "also" in the flood-
insurance sentence reinforces the
independence of the two requirements by
suggesting a separate, additional
obligation—*i.e.*, in addition to the hazard
insurance that is left to the lender's
discretion for most types of hazards, the
debtor must obtain flood insurance in the
requisite amount.  Indeed, if the flood-
insurance sentence were meant merely to
limit the discretion afforded in the prior
sentence, it arguably would have been framed
in direct relation to that sentence.  For
example, it could have said:
"Notwithstanding any requirements of the
Lender, flood insurance must be obtained as
required by the Secretary."  The sentence as
drafted, however, is not framed as a
qualification on the previous sentence, but
as an independent, further requirement.

*Kolbe*, 695 F.3d at 117.  The Appellate Court stated that Kolbe

had "the better argument based on the language and format of the

paragraph [while acknowledging] that the Bank's interpretation [could] also be deemed reasonable." *Kolbe*, 695 F.3d at 117. The Court went on to examine the NFIA as well as language from a HUD handbook and FEMA guidelines before concluding "that a rational jury could construe Paragraph 4 in favor of either Kolbe or the Bank" on the breach of contract claim. *Kolbe*, 695 F.3d at 122. The First Circuit Court of Appeals went on to vacate the district court judgment and remanded the action for further proceedings.

A dissenting opinion was entered in *Kolbe*, however, in which Circuit Judge Boudin performed his own analysis of the hazards provision in the mortgage agreement:

> The first two sentences of the relevant paragraph of the mortgage agreement [] unambiguously give the bank the right to require more flood insurance by empowering it to require insurance in the amount it specifies for "any hazards." A flood qualifies as a hazard, commonly defined as "an unavoidable danger or risk, even though often foreseeable." *The Random House Dictionary of the English Language* 879 (2d ed. unabridged 1987). The third sentence is directed to what the *government* sets as a minimum amount of flood insurance for its own reasons and neither qualifies nor contradicts the right of the *bank*—explicitly reserved—to set a different amount that is higher than the government minimum.
> Kolbe says that because the third sentence specifically deals with flood insurance, this specific provision should implicitly limit the first two sentences to exclude floods. But a specific provision

> trumps a general provision only when the two
> are in conflict, so it is necessary to
> disregard or limit one or the other.  *See*
> Farnsworth, 2 *Farnsworth on Contracts* §
> 7.11, at 297 (3d ed. 2004).  Here, the two
> provisions are consistent:  one lists the
> bank's requirements, and the other lists the
> government's requirements and, since they
> are both minimum requirements, both can be
> met by flood insurance in the amount of the
> higher requirement.
>
>      Relatedly, Kolbe asserts that if the
> first two sentences are read to include
> floods, the third sentence will be rendered
> meaningless surplusage, a result that should
> be avoided because the third sentence uses
> the word "also."  But this too is false;
> HUD's requirement applies even if the lender
> requires less or no flood insurance, and the
> reference to HUD's requirements was
> specifically required by federal law, *see* 24
> C.F.R. § 203.16a(a)(2) which is presumably
> why they were made the subject of a separate
> sentence.  Without some such warning, the
> bank would itself be subject to monetary
> penalties under the flood insurance regime.
> 42 U.S.C. § 4012a(f)(2).

*Kolbe*, 695 F.3d at 127 (Boudin, J., dissenting).  *See also*

*McKenzie v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 5372120, at

*15 (N.D. Cal. October 30, 2012) (rejecting the majority opinion

of *Kolbe* and agreeing with Judge Boudin in dismissing claims for

breach of contract, unjust enrichment, breach of fiduciary duty,

as well as other claims in another putative class action suit).

     After reviewing the arguments presented, the Court adopts

the reasoning of *LaCroix* and the dissenting opinion of *Kolbe* in

finding that the hazards provision in Plaintiff's mortgage

agreement provides Defendant the legal authority to require Feaz
to obtain flood coverage in an amount that exceeds the principal
amount due under the contract.  With that finding, the Court
concludes that Plaintiff has not demonstrated that Defendant has
breached the contract between them in force-placing flood
insurance coverage at a level that exceeds the amount that Feaz
owes under the contract.  Therefore, it is recommended that
Defendant's Motion to Dismiss (Docs. 14-15) be granted as to
Plaintiff's claim for breach of contract.

Feaz's second claim is that Wells Fargo breached a covenant
of good faith and fair dealing (*id.* at ¶¶ 44-49).  Plaintiff
argues that Defendant has breached this covenant by (1)
demanding more flood insurance than either federal law or the
mortgage agreement requires; (2) misrepresenting the required
amount of flood insurance; (3) "exercising in bad faith any
purported discretionary authority" it claims under the mortgage
agreement; and (4) "imposing contractual requirements that did
not exist or that exceeded the requirements disclosed in the
relevant contracts" (Doc. 1, ¶ 46).  The Court notes that the
Alabama Supreme Court has stated that

> "'"There is an implied covenant that neither
> party shall do anything which will have the
> effect of destroying or injuring the rights
> of the other party to receive the fruits of
> the contract; . . . in every contract there
> exists an implied covenant of good faith and

18

> fair dealing."'" (quoting *Sellers v. Head,*
> 261 Ala. 212, 73 So.2d 747, 751 (1954)).
> *See also Restatement (Second) of Contracts* §
> 205 (1981) ("Every contract imposes upon
> each party a duty of good faith and fair
> dealing in its performance and its
> enforcement.").

*Hunter v. Wilshire Credit Corp.*, 927 So.2d 810, 813 n.5 (Ala.

2005) (*quoting Lloyd Noland Foundation, Inc., v. City of*

*Fairfield Healthcare Auth.*, 837 So.2d 253, 267 (Ala. 2002)).

The Court notes that the different ways Feaz asserts that

Wells Fargo has breached the covenant of good faith and fair

dealing all rely on her argument that Defendant breached the

Mortgage Agreement by forcing her to purchase flood insurance at

a higher level than she maintains is required.  The Court has

found that claim non-persuasive and recommended that it be

dismissed.  In connection with this particular claim, the Court

notes that the hazards provision, as construed by the Court,

requires that Plaintiff purchase flood insurance in an amount to

be determined by Defendant (*see* Doc. 14, Exhibit A, ¶ 4) ("This

insurance shall be maintained in the amounts and for the periods

that Lender requires").  The Court reads this provision to mean

that the amount of flood insurance is left to Defendant's sole

discretion.

According to the Alabama Supreme Court,

Under Alabama law "sole discretion" means an

> absolute reservation of a right. It is not
> mitigated by an implied covenant of good
> faith and fair dealing in contracts because
> an unqualified reservation of a right in the
> sole discretion of one of the parties to a
> contract expresses the intent of the parties
> to be subject to terms that are inconsistent
> with any such implied covenant.

*Shoney's LLC v. MAC East, LLC*, 27 So.3d 1216, 1220 (Ala. 2009).

This holding in *Shoney's* alone would seem to foreclose

Plaintiff's claim that Wells Fargo breached a covenant of good

faith and fair dealing.

Nevertheless, the Court notes that, in her complaint, Feaz

asserts that Defendant demanded "that Plaintiff insure her home

for the full replacement cost value (subject to the NFIP limit

of $250,000)" (Doc. 1, ¶ 22). The Court finds that this demand

is consistent with the information provided by the Comptroller

of the Currency, the FDIC, and FEMA through the Department of

Homeland Security (*see* pp. 9-10 & n.6). This, coupled with the

holding of *Shoney's*, leads the Court to the conclusion that

Plaintiff has not made the necessary showing to support her

claim for breach of covenant of good faith and fair dealing.

Therefore, it is recommended that Defendant's Motion to Dismiss

(Docs. 14-15) this claim be granted.

Feaz has also claimed that Defendant breached its fiduciary

duty by misappropriating funds held in trust (*id.* at ¶¶ 50-59).

Plaintiff asserts that, under the terms of the Mortgage

20

Agreement, she had to pay in money on a monthly basis which went into an escrow account held by Defendant, which was to be used to purchase flood insurance.  The breach of fiduciary duty occurred when Wells Fargo used funds from that escrow account to force-place flood insurance in an amount that exceeded the amount of insurance required.  According to Plaintiff, this was a misappropriation of funds, undertaken in bad faith, which resulted in a loss of funds in the escrow account so that Defendant could profit through its self-dealing.

In its Motion to Dismiss, Defendant first asserts that this claim should be dismissed for Plaintiff's failure to meet Fed.R.Civ.P. Rule 8(a)'s requirement that the claim be sufficiently pled (Doc. 15, pp. 17-19).  To properly consider this defense, the Court will examine the specific assertions made by Feaz in the complaint with regard to this claim.

In paragraph fifty-six of the Complaint, Plaintiff claims that Defendant breached its fiduciary duty by "self-dealing and profiteering in connection with force-placed flood insurance policies that were purchased from escrow funds" (Doc. 1, ¶ 56). This appears to relate to the earlier assertions that Defendants "direct[ed] kickbacks, commissions, and other compensation to Wells Fargo" (*id.* at ¶ 4) and that "[u]pon information and belief, Wells Fargo did in fact receive a commission, kickback or other form of compensation in connection with the force

placed insurance that Defendant[] obtained" (*id.* at ¶ 25; *see also* ¶¶ 31(5), 33(e)(ii), 33(f)(ii)).  Presumably, though not specifically stated, American Security Insurance Company was the company through which the kickbacks were funneled (*see id.* at ¶ 24) ("In the Notices of Temporary Flood Insurance, Wells Fargo informed Plaintiff that it had purchased additional flood insurance for her property in the form of an insurance binder issued by American Security Insurance Company").

The Court finds no factual support for the assertions Feaz has made that appear in the preceding paragraph.  As such, the Court finds that Plaintiff's assertions regarding this claim "do not permit the court to infer more than the mere possibility of conduct."  *Iqbal*, 556 U.S. at 679.  Therefore, it is recommended that Plaintiff's claim that Defendant breached its fiduciary duty by misappropriating funds held in trust be dismissed as she has not stated a claim upon which relief can be granted.

The Court further notes, however, that this claim is solely grounded on the premise that Wells Fargo did not have the authority to require Feaz to obtain more flood insurance coverage than she already had.  The Court has previously found that Plaintiff's breach of contract claim is without merit and has recommended that it be dismissed.  In addition to the previous reason for recommending that this claim be dismissed, it is further recommended that Plaintiff's claim for breach of

fiduciary duty be dismissed as the premise for it is without
foundation.

Feaz's final claim is that Defendant has been unjustly
enriched "as a result of the conduct described in the Complaint
and other inequitable conduct" (Doc. 1, ¶ 61; *see generally* ¶¶
60-65).  The assertions in the complaint that form the basis of
this claim are as follows:

> 62)  Upon information and belief, Wells
> Fargo received a benefit in the form of
> kickbacks, commission payments and/or other
> remunerations in connection with force-
> placed flood insurance.
> 63)  Retention of these benefits by
> Wells Fargo would be unjust and inequitable.
> Federal law only allows lenders and services
> to "charge the borrower for the cost of
> premiums and fees *incurred* by the lender or
> servicer for the loan in purchasing the
> insurance.  42 U.S.C. § 4012(e)(2); *see also*
> 12 C.F.R. § 22.3.  Defendants abused their
> discretion to pass through costs for force-
> placed flood insurance, by charging
> Plaintiff and other Lender-Placed Insurance
> Class members' amounts in excess of the net
> cost incurred by Defendants for such flood
> insurance and by retaining at least a
> portion of the premium payments, kickbacks,
> commissions, or other compensation.
> 64)  The kickbacks, commissions, or
> other compensation that Wells Fargo received
> in connection with force-placed flood
> insurance were not legitimately earned, and
> came at the ultimate expense of Plaintiff
> and other members of the Lender-Placed
> Insurance Class who had flood insurance
> force-placed on them by Wells Fargo.
> 65)  Because it would be unjust and
> inequitable for Wells Fargo to retain such
> benefits, Plaintiff and the Lender-Placed

> Insurance Class are entitled to restitution
> of all monies unjustly and inequitably
> retained.  Wells Fargo cannot retain these
> payments in good conscience.

(Doc. 1).

The Alabama Supreme Court has defined unjust enrichment as

follows:

> In order for a plaintiff to prevail on a
> claim of unjust enrichment, the plaintiff
> must show that
>
> > "the '"defendant holds money
> > which, *in equity and good
> > conscience,* belongs to the
> > plaintiff or holds money which was
> > improperly paid to defendant
> > because of *mistake or fraud.*"'
> > *Dickinson v. Cosmos Broad. Co.,*
> > 782 So.2d 260, 266 (Ala. 2000)
> > (quoting *Hancock-Hazlett Gen.
> > Constr. Co. v. Trane Co.,* 499
> > So.2d 1385, 1387 (Ala. 1986)). . .
> > .  'The doctrine of unjust
> > enrichment is an old *equitable*
> > remedy permitting the court in
> > equity and good conscience to
> > disallow one to be unjustly
> > enriched at the expense of
> > another.'  *Battles v. Atchison,*
> > 545 So.2d 814, 815 (Ala.Civ.App.
> > 1989)."
>
> *Avis Rent A Car Sys., Inc. v. Heilman*, 876
> So.2d 1111, 1123 (Ala. 2003).  "'One is
> unjustly enriched if his retention of a
> benefit would be unjust.'"  *Welch v.
> Montgomery Eye Physicians, P.C.,* 891 So.2d
> 837, 843 (Ala. 2004) (quoting *Jordan v.
> Mitchell,* 705 So.2d 453, 458 (Ala.Civ.App.
> 1997)).  The retention of a benefit is
> unjust if

> " '(1) the donor of the benefit .
> . . acted under a mistake of fact
> or in misreliance on a right or
> duty, or (2) the recipient of the
> benefit . . . engaged in some
> unconscionable conduct, such as
> fraud, coercion, or abuse of a
> confidential relationship.  In the
> absence of mistake or misreliance
> by the donor or wrongful conduct
> by the recipient, the recipient
> may have been enriched, but he is
> not deemed to have been *unjustly*
> enriched.' "
>
> *Welch,* 891 So.2d at 843 (quoting *Jordan,* 705
> So.2d at 458).  The success or failure of an
> unjust-enrichment claim depends on the
> particular facts and circumstances of each
> case.  *Heilman, supra.*

*Mantiply v. Mantiply*, 951 So.2d 638, 654-55 (Ala. 2006).

Like the breach of fiduciary claim, the Court finds that Plaintiff has not sufficiently pled this claim as those assertions "do not permit the court to infer more than the mere possibility of conduct."  *Iqbal*, 556 U.S. at 679.  As such, it is recommended that Plaintiff's claim of unjust enrichment be dismissed as she has not stated a claim upon which relief can be granted.

In conclusion, Plaintiff has raised four different claims in this action.  It is recommended that Defendant's Motion to Dismiss (Docs. 14-15) be granted as to all four claims and that this action be dismissed.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that

transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 16th day of November, 2012.

s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE